Richard TOOMEY, Individually and on behalf of the O'Connor Lumber Esop Participants Committee, Plaintiffs,

v.

Robert L. JONES, Bernard St. George, Pension & Health Associates, Inc. and O'Connor Lumber Co. of Westfield, Inc., a/k/a O'Connor Lumber Co., Inc., Defendants.

Civ. A. No. 92–30222–MAP.

United States District Court, D. Massachusetts.

June 24, 1994.

John J. McCarthy, Michael J. Rye, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Richard Toomey.

Thomas E. Argenio, Springfield, MA, for Robert L. Jones.

Daniel M. Kelly, LaCroix, Fuller, Springfield, MA, for Bernard St. George.

Kenneth I. Gordon, David H. Peltz, Parker, Coulter, Daley & White, Boston, MA, for Pension & Health Associates, Inc.

## MEMORANDUM REGARDING DEFENDANT PENSION & HEALTH ASSOCIATES, INC.'s MOTION FOR SUMMARY JUDGMENT

PONSOR, District Judge.

### I. INTRODUCTION

The plaintiffs are former employees of O'Connor Lumber Company of Westfield, Massachusetts and were participants in its employer-sponsored stock ownership plan. In 1991, all the assets of the plan were invested in preferred stock of O'Connor Lumber. In that same year, O'Connor Lumber became insolvent, closed its doors and entered bankruptcy. Consequently, the assets of the stock ownership plan became worthless and participants lost any vested pension benefits or other distributions due them under the terms of the plan.

In 1992, plaintiffs filed suit naming as defendants O'Connor Lumber Company, its two principal stockholders, Robert Jones and Bernard St. George, and Pension & Health Associates, a consulting service for pension and health plans. The complaint charged all defendants with violations of the federal Employee Retirement and Income Security Act (ERISA) and with common law breach of contract and misrepresentation. Before the court is defendant Pension & Health Associates' motion for summary judgment as to all claims. For the reasons stated below, the court will allow defendant's motion in its entirety.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

The facts pertinent to defendant's motion for summary judgment are largely undisputed. Plaintiffs Richard Toomey and thirty-five persons comprising the O'Connor Lumber ESOP Participants Committee were employed by defendant O'Connor Lumber Company of Westfield, Inc. ("O'Connor Lumber") and participated in O'Connor Lumber's Employee Stock Ownership Plan ("ESOP" or "Plan"). Defendants Robert L. Jones and Bernard St. George were the owners and, respectively, President and Vice President of O'Connor Lumber. The Plan Agreement identified O'Connor Lumber as the Plan Administrator and gave O'Connor Lumber's Board of Directors the authority to appoint the Plan trustees. Jones and St. George became the sole owners of O'Connor Lumber in 1977 and appointed themselves as trustees for the Plan.

Beginning in 1977 until 1989, defendants Jones and St. George were jointly responsible for investing the assets of O'Connor Lumber's ESOP. As an employee stock ownership plan, the assets of the Plan were invested in preferred stock of O'Connor Lumber. This investment strategy tied the success of the Plan to the financial health of O'Connor Lumber. Jones and St. George, as Plan trustees, met yearly to decide the amount of any contributions to the Plan and how they would be invested. Except for two years (1988 and 1989), between 1973 and 1991 Plan participants received dividend payments in the form of preferred stock. The 1984 amended Articles of the Plan stated that participants could receive an 8% cash dividend yearly based on the value of their shares. Cash payments were actually made to participants only in 1988 and 1989. The 1989 amendments to the Plan reinstated the former practice of paying dividend payments in preferred stock and eliminated yearly cash payments.

In 1989, St. George resigned from his positions as company vice-president and Plan trustee. At that time, the Plan purchased all of St. George's shares of O'Connor Lumber common stock. In addition, St. George received from O'Connor Lumber an unspecified, but apparently substantial, sum in exchange for his interest in the company's property. These exchanges not only diminished the liquid assets of the Plan but drastically reduced the working capital of O'Connor Lumber. It is not disputed that these deals contributed, at least to some extent, to the economic demise of O'Connor Lumber and the ultimate failure of the Plan.

Pension & Health Associates, Inc. ("PHA") is a Springfield, Massachusetts company that provides administrative and consulting services for pension and health plans. In the summer of 1990 PHA was hired by the Plan trustees to perform services associated with the administration of the Plan. In an engagement letter to O'Connor Lumber dated September 1, 1990, William Massidda, PHA's President, described the services it was to provide. These included accounting, maintenance of individual employee accounts, preparation and communication of an Annual Report to participants, reporting to government agencies as required by law and advice concerning Plan design, reporting requirements, fiduciary responsibilities and changes in the law governing the Plan. At his deposition, Massidda stated that it is PHA's policy not to involve itself in decisions regarding Plan investments. According to Massidda, "That's the one duty we don't get involved in, but we help them with almost everything else." Deposition of William Massidda, Ex. A, Defendant's Memorandum in Support of its Motion for Summary Judgment. Massidda had access to the financial records of the Plan but

not to the business records of O'Connor Lumber.

In 1989, the United States Department of Labor ("Department") initiated an audit of the Plan because the Department was concerned that the employee-owned shares of O'Connor Lumber were strictly non-voting stock. One of the first things PHA did was to participate in negotiations with the Department to help broker an agreement allowing Plan participants to convert their non-voting shares of preferred stock to voting shares when an employee became eligible for a distribution of benefits.

PHA suggested that Jones revamp the Plan's structure in accordance with a model plan developed and used by PHA. As sole trustee, Jones adopted this proposal, and the O'Connor Lumber Plan was revised accordingly. Beginning June 30, 1990, in order to preserve assets to pay benefits due, the revised plan eliminated the 8% yearly cash dividend paid to participants. In place of cash payments, stock dividends were once again issued to participants.

PHA held two informational meetings for Plan participants to explain the nature of the stock ownership plan and the benefits they were entitled to receive. At the April 11, 1991 meeting, Massidda reported that accountants were currently auditing the Plan and, that upon completion of the audit, a firm valuation of their preferred stock would be reported to participants. Massidda reported to participants that the accountants thought the actual value of the stock might be around eighty dollars per share, considerably less than the one hundred dollar per share value assumed by participants in the Plan. Subsequent to this meeting, Massidda had a number of individual conversations with Toomey regarding the value of the Plan's preferred stock. Massidda informed Toomey that he did not know the actual value of the stock and would only be able to report that to participants when the audit was complete.

During this same time period, O'Connor Lumber was faced with a number of serious financial problems[1] including a shortage of working capital and an inability to secure a line of credit from any area bank. In October, 1991, O'Connor Lumber ceased operations and went into an assignment for the benefit of creditors. On November 19, 1991 the assets of O'Connor Lumber were liquidated and plaintiffs were notified that their Plan was discontinued. Subsequently, no participant has received any distribution of benefits from the Plan. In October, 1992, plaintiffs filed this suit naming Jones, St. George, O'Connor Lumber and PHA as defendants and alleging violations of ERISA, breach of contract and misrepresentation.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Goldman v. First Nat'l Bank,* 985 F.2d 1113, 1116 (1st Cir.1993). First, the moving party must aver an absence of evidence to support the nonmoving party's case. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). In order to fend off summary judgment, a plaintiff must then "establish at least a genuine issue of material fact on every element essential to his case in chief." *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993), quoting *Mesnick v. General Electric Co.,* 950 F.2d 816, 820 (1st Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). At summary judgment it is this court's obligation "to review the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmoving party's favor." *LeBlanc v. Great American Insurance Co.,* 6 F.3d 836, 841 (1st Cir.1993), citing

---

1. There is evidence in the record that the O'Connor Lumber experienced a series of financial setbacks beginning as early as 1974. For example, a July 28, 1991 letter from Jones to O'Connor Lumber employees explains that serious economic conditions for the previous few years resulted in a large number of layoffs and prohibited the distribution of stock to eligible employees. To the extent these facts are disputed they are immaterial to PHA's motion for summary judgment.

*Mesnick v. General Electric Co.*, 950 F.2d at 820.

Keeping this standard in mind, the court will address PHA's motion for summary judgment.

## IV. *DISCUSSION*

Six of plaintiffs' sixteen counts are directed against PHA. In Counts I and II plaintiffs allege that PHA breached its fiduciary duty under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, and breached the terms of the Plan. Plaintiffs argue that PHA became the *de facto* Plan administrator and, as such, owed the plaintiffs a fiduciary's duty of care. PHA allegedly breached this fiduciary duty while exercising discretionary authority over the financial assets of the plan.

Plaintiffs contend that beginning in 1990, PHA assumed the responsibilities of Plan Administrator and, as such, was a fiduciary within the meaning of ERISA. Specifically, plaintiffs claim that in 1990, PHA, not Plan trustee Jones, made the decision to issue stock dividends rather than pay cash dividends to the plaintiffs. Plaintiffs further claim that PHA breached its fiduciary duties by misrepresenting to plaintiffs the actual conditions of the Plan assets and the value of the preferred stock. Based on these same facts, plaintiffs also allege breach of fiduciary duty (Count V), breach of contract (Count IX), and negligent and intentional misrepresentation (Counts XI and XII).

PHA moves for summary judgment on all counts against it. PHA contends that the undisputed facts show that it performed only ministerial or administrative duties for the Plan and, that, for this reason, it was not a fiduciary as defined by the relevant statutory and regulatory provisions of ERISA. PHA also claims that the facts of record do not support plaintiffs' claims of negligent or intentional misrepresentation or breach of contract.

The court will address each of these issues below.

## A. *Liability as a Fiduciary under ERISA*

Plaintiffs argue that PHA is a fiduciary as defined in ERISA. The relevant statutory sections provide for fiduciary status only under the following circumstances:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA also assigns fiduciary status to persons "named [as fiduciaries] in the plan instrument, or who, pursuant to a procedure specified in the plan, [are] identified as fiduciar[ies] ..." 29 U.S.C. § 1102(a)(2); *see also* 29 U.S.C. § 1105(c)(1) (permitting allocation of fiduciary responsibility pursuant to the plan instrument).

It is firmly established that attorneys, accountants, auditors, actuaries and others who render their professional services to an employee benefit plan are not fiduciaries as defined by ERISA *unless* there is a showing of control respecting the management of the plan's assets, investment advice for a fee, or discretionary responsibility over the administration of the plan. *Anoka Orthopaedic Assoc., P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir.1990) (accounting firm); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454–55 (6th Cir.1991) (claims processing company); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 537 (7th Cir.1991), (actuaries); *Yeseta v. Baima*, 837 F.2d 380, 385 (9th Cir.1988) (attorney). In reaching this conclusion, courts have expressly relied on interpretive regulations issued by the Department of Labor relating to certain aspects of fiduciary responsibility under ERISA. 29 C.F.R. § 2509.75–8 (1993). *See e.g., Baxter v. C.A. Muer Corp.*, 941 F.2d at 455; *see also Pappas v. Buck Consultants, Inc.*, 923 F.2d

at 537 (citing *Otto v. Variable Annuity Life Ins.*, 814 F.2d 1127, 1135 (7th Cir.1986), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988)). The construction of regulations issued by the Department of Labor, which is entrusted with ERISA enforcement, is entitled to considerable weight.

■ The Labor Department guidelines clearly state that persons "processing claims, applying plan eligibility rules, communicating with employees and calculating benefits" are not fiduciaries under ERISA. *Baxter v. C.A. Muer Corp.*, 941 F.2d at 455 (citing 29 C.F.R. § 2509.75–8 D–2). It is undisputed that the majority of PHA's services, at least, were in the nature of claims processing, communications with employees and calculation of benefits. As such, the bulk of PHA's responsibilities to the Plan were unquestionably nonfiduciary.

Plaintiffs claim that PHA acted as a fiduciary because the services it provided were broader than those described in the engagement letter from PHA to O'Connor Lumber. *Supra* at 21–22. In a September 1, 1990 letter to Plan participants, PHA in fact stated that it "assumed responsibility for the administration of your retirement plan." Plaintiffs' Ex. 1. In an effort to buttress their claim that PHA was a fiduciary, plaintiffs vigorously underline the undisputed fact that the Plan adopted PHA's model plan documents wholesale. Plaintiffs argue this conduct demonstrates that PHA, not the Plan trustee, performed the discretionary fiduciary functions assigned to the Plan Administrator. Specifically, the plaintiffs argue that PHA, not trustee Jones, made the decision to cease payment of cash dividends to participants and thereby exercised control over plan assets. Even if PHA only recommended the change in the form of dividend payments, plaintiffs contend that this sufficiently constitutes investment advice and subjects PHA to ERISA's fiduciary standards. Finally, and more generally, plaintiffs contend that the trustees relied on the authority of PHA and actually believed PHA to be the Plan Administrator.

■ PHA does not challenge plaintiffs' contention that the Plan "relied" on PHA and adopted its recommendations regarding the structure of plan administration. Indeed, the services plaintiffs point to as establishing PHA's fiduciary status are expressly covered by the engagement letter from PHA to O'Connor Lumber. That document states that PHA will "assume responsibility for keeping up with current laws and regulations in order to properly maintain the Plan on a qualified status for tax purposes. This includes advice concerning Plan design considerations, ... fiduciary responsibilities, and other matters." Plaintiffs' Ex. 3. The Department of Labor guidelines, however, explain that "making recommendations to others for decisions with respect to plan administration" does not establish fiduciary status under ERISA. 29 C.F.R. § 2509.75–8 (1993). Plaintiffs have not provided evidence from which a reasonable factfinder could conclude that, by recommending the adoption of its model plan, PHA became the Plan administrator. Moreover, by adopting PHA's model plan, the O'Connor Plan did not delegate, nor did PHA voluntarily assume, any discretionary authority or responsibility in the administration of the Plan. Once this is recognized, it is clear that PHA's statement in a letter to Plan participants that it was assuming responsibility for administering the Plan was not an admission and is not probative evidence of discretionary authority or responsibility for the Plan.

Plaintiffs offer another, slightly different tack, arguing that PHA was a fiduciary because it offered investment advice to the Plan Administrator. As noted, the model plan provided by PHA contained a provision that ceased the yearly payment of cash dividends and replaced it with the traditional practice of paying dividends in the form of O'Connor Lumber preferred stock. Plaintiffs claim this suggestion constituted advice as to the investment of plan assets. The plaintiffs' position on this point is not supported by the regulations or decisional law interpreting ERISA.

Labor Department regulations explain that a person provides investment advice to a plan governed by ERISA only when they offer advice as to "the value of securities or other property, or make recommendations[s] as to the advisability of investing in, purchasing, or

selling securities or other property." 29 C.F.R. § 2510.3–21. In addition, such a person must also have "discretionary authority or control ... with respect to purchasing or selling securities or other property for the plan. *Id.*

In accordance with these guidelines the Court of Appeals for the Eighth Circuit held that accountants are ERISA fiduciaries when they recommend transactions, structure deals or "provide investment advice to such an extent that they exercised effective control over the ESOP's assets." *Martin v. Feilen*, 965 F.2d 660, 669 (8th Cir.1992). Similarly, a district court has held that a brokerage firm whose unsolicited recommendations to invest securities were "blindly followed" by the plan trustee was an ERISA fiduciary. *Stanton v. Shearson Lehman/American Express, Inc.* 631 F.Supp. 100, 102–104 (N.D.Ga.1986).

■ Under the established regulatory and judicial standards PHA did not become a fiduciary simply by recommending that the Plan cease payment of cash dividends. PHA merely provided the Plan with a product—a model plan—and services—accounting, auditing and claims processing. In *Consolidated Beef Industries, Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992), the Court of Appeals held that a life insurance company that sold a pension plan to an employer/plan trustee was not a fiduciary, did not offer investment advice, and only engaged in the sale of its product. Similarly, a recommendation to alter the *form* of dividend payments, such as the one contained in the PHA-plan proposed and adopted in this case, is not investment advice as to the value of securities or advice as to investing in, purchasing or selling securities or other property owned by a plan. *See Martin v. Feilen*, 965 F.2d at 669.

The only case plaintiffs cite in support of their theory of fiduciary status is *Blatt v. Marshall & Lassman*, 812 F.2d 810 (2nd Cir.1987). In *Blatt*, the defendant accounting firm refused to provide a "Notice of

Change" form to the plan administrator for one and a half years. Without this form, participants could not receive their pension benefits. The *Blatt* court concluded that, as to their withholding forms, the accountants acted as fiduciaries because they exercised *actual* control over the disposition of plan assets and had a duty to provide the plan administrator with the form at issue. *Id.* at 813[2]. Here, unlike the accountants in *Blatt*, PHA had *no* discretionary control over the disposition of plan assets and no duty to pay cash dividends to the plaintiffs. Indeed, a decision by PHA to pay cash dividends would have been an unauthorized exercise of discretionary authority because the amended Plan provided that dividends be paid in the form of stocks not cash. Even the broad construction of fiduciary duty articulated in *Blatt* does not support the plaintiffs' position that PHA acted as a fiduciary here.

■ Further support for the conclusion that PHA is not an ERISA fiduciary may be found in *Robert Reich, Secretary of Labor v. Richard Rowe*, 20 F.3d 25 (1st Cir.1994). This recent decision held that ERISA does not provide a remedy against non-fiduciaries who knowingly participate in a fiduciary breach. *Id.* at 26, (citing *Mertens v. Hewitt Associates*, —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). In *Rowe*, the court expressed its concern "that extending the threat of liability over the heads of those who only lend professional services to a plan without exercising any control over, or transacting with, plan assets will deter such individuals from helping fiduciaries navigate the intricate financial and legal thick of ERISA." *Id.* 20 F.3d at 32. To repeat, the record clearly reflects that PHA performed only ministerial tasks—however complex and involved—on behalf of the Plan and rendered advice only in regard to these services. A finding that would subject PHA to ERISA liabilities would run counter to the teachings of the *Rowe* decision.

Plaintiffs also argue that the 1984 amended Plan permitted the distribution of early

---

**2.** *Cf. Confer v. Custom Engineering Co.,* 952 F.2d 34, 37–38 n. 4 (3rd Cir.1991) (Criticizing the holding of *Blatt* as "unnecessarily broad" and

arguing that the plaintiff should have sought relief simply by suing to recover benefits).

retirement benefits to participants when they severed their employment with O'Connor Lumber prior to their normal retirement date. Plaintiffs allege that the decision not to distribute early retirement benefits violated both the express provisions of the Plan and ERISA. To bolster this claim, plaintiffs contend that the 1984 Plan prohibited amendment of the Plan to deprive a participant of any benefits to which he or she was entitled.

■ Even assuming, *arguendo,* that PHA made this decision and thereby became an ERISA fiduciary, plaintiffs' claim would still fail because such a decision does not violate ERISA. ERISA's fiduciary duties pertain only to the payment of accrued benefits. *Sutton v. Weirton Steel Div. of Nat. Steel Corp.,* 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984); *Ashenbaugh v. Crucible Inc., 1975 Salaried Retirement Plan,* 854 F.2d 1516, 1525–26 (3rd Cir.1988), *cert. denied,* 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1019 (1989); *Berard & Almeida v. Royal Electric, Inc.,* 795 F.Supp. 519, 527 (D.R.I.1992). ERISA defines an accrued benefit "as an individual's right to a retirement benefit 'determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age'". *Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 284 (3rd Cir.1988) (*quoting* 29 U.S.C. § 1002(23)).

■ The statute defines "normal retirement age" as the "earlier of [either] the time a plan participant attains normal retirement age under the plan, or . . . the time a plan participant attains age sixty-five." 29 U.S.C. § 1002(24). In other words, a benefit does not "accrue" until normal retirement age as defined by ERISA. *Id.* For this reason "accrued benefits secured by ERISA do not encompass unfunded, contingent early bene-

fits or severance payments." *Sutton v. Weirton Steel,* 724 F.2d at 410.

■ Under this legal standard, the 1989 amendment to the Plan allowing payment of benefits only upon attaining normal retirement age was not a denial of "accrued benefits" because it did not deprive any participant of his or her retirement benefits. The amended Plan merely eliminated a severance benefit and did no more than legitimately postpone a participant's receipt of benefits until normal retirement age. No ERISA-based fiduciary duty attaches to such decisions. *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155 (3rd Cir.1990) (citing *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1045 (7th Cir.1988)).

**B.** *State Common Law Claims and ERISA Preemption*

■ The facts before the court, even when viewed in a light most favorable to plaintiffs, do not support allegations of misrepresentation, breach of fiduciary duty and breach of contract levelled against PHA [3]. However, a lengthy rehashing of the facts is unnecessary. What is decisive to the resolution of plaintiffs' common law claims is ERISA's broad preemption provision. Section 514 of ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ." 29 U.S.C. § 1144. "The Supreme Court has established that a law relates to an employee benefit plan . . . if it has a connection with or reference to such a plan." *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994) (quoting *Ingersoll–Rand, Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)). A cause of action "relates to" and is preempted by ERISA if either of two tests are satisfied. *Ingersoll–Rand, Co. v. McClendon,* 498 U.S. at 140, 111 S.Ct. at 483–84; *see also Vartanian v. Monsanto Co.,* 14 F.3d at 700. There

---

**3.** The crux of the misrepresentation and breach of contract claims rest on the factual allegation that PHA misrepresented the value of O'Connor Lumber's stock in its communications with the plaintiffs. However, the only conclusion supported by the facts is that PHA was the messenger of bad news. Each time PHA reported the value of stocks to Toomey and other participants

the communications were qualified by a disclaimer explaining that the figures were inconclusive and based on the audit-in-progress of accountants not in the employ of PHA. This is not enough to sustain a claim of misrepresentation, negligent or otherwise nor a claim for breach of contract.

is ERISA preemption "where a plaintiff, in order to prevail, must plead, and the court find, that an ERISA plan exists." *Id.* Alternatively, even if there is no express preemption, there is preemption if the cause of action "conflicts directly with an ERISA cause of action." *Id.*

In this case, the former test applies. The O'Connor Lumber Plan is inextricably implicated in the plaintiffs' common law claims of misrepresentation and breach of contract. *See Vartanian v. Monsanto Co.* 14 F.3d at 700. Indeed, plaintiffs' common law pleadings expressly assert the existence of an ERISA plan as the backdrop for these claims. Moreover, this court would have to recognize the existence of the Plan at issue and interpret its provisions to resolve the contract and misrepresentation claims. *See Id.* In a recent decision, the Supreme Court reaffirmed *Ingersoll–Rand,* holding that common law actions against nonfiduciaries arising out of a dispute over an employee stock ownership plan are preempted by the broad reach of ERISA. *See Mertens v. Hewitt Associates,* — U.S. —, —, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993) (noting that ERISA non-fiduciaries were at one time subject to state trust law, but that such actions are now preempted by ERISA). Without control and authority over a plan, a person or professional organization in PHA's position is not subject to common law claims for rendering services relating to an ERISA plan. *Id.*

### V. *CONCLUSION*

For the foregoing reasons, the court ALLOWS defendant PHA's motion as to Counts I and II (ERISA), Count V (Breach of Fiduciary Duty), Count IX (Breach of Contract), and Counts XI and XII (Misrepresentation).

A separate order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum, defendant Pension & Health Associates, Inc.'s Motion for Summary Judgment is hereby ALLOWED.