McMORGAN & COMPANY, as Investment Manager and a Fiduciary of the Pension Trust Fund for Operating Engineers, Carpenters Pension Trust Fund for Northern California, Northern Nevada Carpenters Pension Trust Fund, Sheet Metal Workers of Northern California Pension Trust Fund, Carpenters Annuity Trust Fund for Northern California, Bay Area Pipe Trades Pension Trust Fund, California Ironworkers Field Pension Trust Fund, Northern California Plastering Industry Pension Trust Fund, and Pipe Trades District Council No. 36 Pension Trust Fund, Plaintiffs,

v.

FIRST CALIFORNIA MORTGAGE CO., a California corporation, Defendant.

No. C–94–1115.

United States District Court, N.D. California.

Feb. 8, 1995.

Victor J. VanBourg, Christian L. Raisner, VanBourg, Weinberg, Roger & Rosenfeld, Oakland, CA, Judith Z. Gold, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for Plaintiff McMorgan & Co.

Roger McLeod, Gregory Lippetz, Brobeck, Phleger & Harrison, San Francisco, CA, for Defendant.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff McMorgan & Company's motion for summary adjudication and defendant First California Mortgage Company's motion to dismiss for lack of subject matter jurisdiction having come before the Court, and the Court having considered the briefs and oral argument, plaintiff's motion for summary adjudication is denied and defendant's motion to dismiss is denied.

### I.

McMorgan & Company ("McMorgan") brings this suit on behalf of several pension trust funds ("Trust Funds") for which it is the investment manager. The Trust Funds are multiemployer plans under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA"). Defendant First California Mortgage Co. ("FCMC") performed real estate mortgage services for the Trust Funds in connection with multiple construction loans made to real estate developers. These loans were purchased by the Trust Funds from FCMC, pursuant to certain sale-servicing agreements ("Servicing Agreements").

McMorgan alleges FCMC exercised discretionary control over the Trust Funds and was, therefore, a fiduciary under ERISA. It brings claims under ERISA against FCMC for eight construction loans that went into default. McMorgan alleges that FCMC's servicing of the construction loans was performed negligently and fraudulently because FCMC concealed from McMorgan the true facts and circumstances surrounding the construction activities of the projects. It further alleges that the servicing of the loans fell significantly below any reasonable standards

of prudent loan servicing. McMorgan claims that the Trust Funds have been damaged in excess of $29,000,000.

McMorgan brings its claims under several theories: (1) breach of fiduciary duty under ERISA; (2) accounting under ERISA; (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing; (5) negligence; (6) breach of fiduciary duty as a broker; (7) accounting; and (8) declaratory relief.

The two motions currently before the Court involve the same issue: Was FCMC a "fiduciary" under ERISA, 29 U.S.C. § 1002(21)(A)? FCMC argues that it was not, that ERISA claims cannot be made against it and, therefore, the action must be dismissed for lack of subject matter jurisdiction. McMorgan counters by asking the Court to determine on summary adjudication that FCMC acted as a fiduciary under ERISA, as a matter of law.

In order to determine whether or not FCMC was a fiduciary, it is important to understand the full scope of the duties undertaken by FCMC. The Servicing Agreements provide the basis for evaluating the relationship between McMorgan and FCMC. They do not specifically designate FCMC as a fiduciary. McMorgan argues, however, that the duties as outlined in the Servicing Agreements confer this status. FCMC disputes this contention. Both parties agree that FCMC agreed to undertake the duties as outlined in the Servicing Agreements.

The Servicing Agreements for the eight loans are similar in nature. Under the Servicing Agreements, FCMC agreed to undertake several duties, including: (1) receive and evaluate the borrower's requests for advances on the undisbursed portion of its construction loan; (2) not modify loan accounts so as to reallocate the loan or to change the total funds of any loan account without the prior written consent of the bank; (3) advise the bank when funds in addition to those in the loan account should be disbursed for the protection of the bank; (4) compare lien notice with final cost breakdown and advise the bank of discrepancies; (5) advise the bank when it determines that the undisbursed funds of the loan accounts will be insufficient to pay for costs of construction; and (6) advise the bank in the event of default. (*See, e.g.,* First Am.Compl., filed June 9, 1994, Ex. A at 3–7.)

FCMC argues that it performed the duties of a typical construction loan servicer and should not be converted into an ERISA fiduciary. FCMC emphasizes the fact that it never actually controlled any of the Trust Funds' assets, because any advance made to borrowers was made out of its own credit line, and it was only reimbursed once McMorgan approved the advance. FCMC alleges that the duties it performed pursuant to the Servicing Agreements were typical of mortgage servicing agreements that FCMC uses for its commercial loans. Further, FCMC argues that it was never asked to go beyond its servicing duties to act as a fiduciary for the Trust Funds.

## II.

### A.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment identify evidence that shows the absence of a genuine issue of material fact. Once the moving party has made this showing, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted).

■ McMorgan argues that the Court may grant summary adjudication as to the issue of whether FCMC was a fiduciary under ERISA solely by examining the duties FCMC undertook when it signed the Servicing Agreements. It argues:

> Summary adjudication must be granted because there is *no dispute* that FCMC entered into the written agreements upon which this motion is based. Any fair reading of the Servicing Agreements requires finding that FCMC had some fiduciary duties.

(Pl.'s Reply to Def.'s Opp'n to Mot. for Summ. Adjudication of Issues, filed Aug. 16, 1994, at 2:1–4.) Thus, the Court must decide, as a matter of law, whether the duties undertaken by FCMC in the Servicing Agreements are sufficient to satisfy the ERISA fiduciary definition.

At the heart of McMorgan's motion for summary adjudication is the question of who is a fiduciary under ERISA. Section 1002(21)(A) (1985) states in pertinent part:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

McMorgan argues that FCMC is a fiduciary under both prong (i) and prong (iii) of this definition.

■ In keeping with the remedial purposes of ERISA, the term "fiduciary" should be interpreted liberally. Ronald J. Cooke, *ERISA Practice and Procedure* § 6.02 at 6–4

(1989) (hereinafter cited as "Cooke"); *see, e.g., Donovan v. Mercer,* 747 F.2d 304, 308 (5th Cir.1984). The legislative history of ERISA states:

> The term 'fiduciary' ... includes persons to whom 'discretionary' duties have been delegated by named fiduciaries. While the ordinary functions of consultants and advisors to employee benefits plans ... may not be considered as fiduciary functions, it must be recognized that there will be situations where such consultants and advisors may because of their special expertise, in effect, be exercising discretionary authority or control with respect to the management or administration of such plan or some authority regarding its assets. In such cases, they are regarded as having assumed fiduciary obligations within the meaning of the applicable definition.

Cooke, § 6.02 at 6–4–6–5 (quoting S.Rep. No. 383, 93d Cong., 1st Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 5103 (footnote omitted)). The task in this case is to determine whether FCMC, as a construction loan servicer, was exercising "ordinary functions" (also called ministerial functions) or was exercising discretionary authority such that it was a fiduciary under ERISA.

■ In determining the fiduciary status of a party under ERISA, courts must engage in a case-by-case analysis "of whether that person performs any of the functions set forth in the statutory definition, the key concept of which is *discretionary authority or control.*" Cooke § 6.02 at 6–5 (emphasis added). Status as a fiduciary is determined by function, not by label. *Useden v. Acker,* 947 F.2d 1563, 1574 (11th Cir.1991), *cert. denied,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). Additionally, the state of mind of the potential fiduciary is not determinative. *Thomas, Head & Greisen Employees Trust v. Buster,* 24 F.3d 1114, 1119 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 935, 130 L.Ed.2d 881 (1995). The *exercise* of discretionary authority may confer fiduciary status, regardless of whether it was granted. Cooke § 6.02 at S–146.

The Ninth Circuit has endeavored to define who is an ERISA fiduciary:

An ERISA fiduciary includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration.

*Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987). This definition, however, does little to guide courts in determining what is or is not "discretionary."

The Department of Labor has attempted to offer some guidance on the difference between discretionary and a ministerial function. The following are examples of "purely ministerial" duties: application of rules determining eligibility for participation or benefits; calculation of benefits; preparation of employee communication material; preparation of reports required by government agencies; orientation of new participants; processing claims; and making recommendations to others for decisions with respect to plan administration. 29 C.F.R. § 2509.75–8.

This regulation, however, apparently was written primarily to address when insurance companies, or companies that deal directly with employee claims, exercise ministerial or discretionary authority. It has little applicability to this case, because it does not describe what duties would be considered "ministerial" if performed by a loan servicer. The list of ministerial duties set forth by the Department of Labor is not exhaustive. Therefore, the Court must turn to case law to determine whether FCMC's duties were "discretionary" or "ministerial."

The case most closely analogous to this case is *Robbins v. First American Bank*, 514 F.Supp. 1183 (N.D.Ill.1981). In *Robbins*, trustees of various teamster pension funds brought suit against First American Bank ("First American") and several other defendants arising out of plaintiffs' purchase of a participation interest in a loan extended by First American to Moorefield Enterprises. *Id.* at 1186. The trustees and First American signed a loan participation agreement, whereby the trustees would loan ninety percent of the total loan to the borrower with First American loaning the remaining ten percent. Under the terms of the agreement:

The plaintiffs' written consent was required before the bank could either modify, terminate or take any other action with regard to the loan. The bank was obligated to notify the plaintiff of matters which affected their interests in the transaction as well as to "endeavor to use the same care that it would exercise in the making and handling of loans for its own account."

*Id.* On the basis of this agreement, First American sought to dismiss the ERISA claims against it.

In its complaint, the *Robbins* plaintiffs alleged that substantial sums were borrowed and diverted for improper purposes. It also alleged that First American "failed to make an independent determination of the value of the land, failed to provide plaintiffs with information including Moorefield's certified financial statements, failed to notify plaintiffs of the borrowers' default and failed to insure that Moorefield complied with conditions imposed by the bank." *Id.* These allegations are very similar to those made by McMorgan against FCMC.

The district court granted First American's motion to dismiss. It found that:

the bank was merely a servicing agent for a particular investment. The bank was never itself involved with the administration or management of the fund itself or in making its investment policies and decisions. The bank was required to fulfill various ministerial functions respecting one investment, including making advances to the borrower and remitting loan repayments to plaintiffs. The fixed terms of the loan and the commercial nature of the transaction belie the plaintiffs' allegations of sufficient discretionary responsibility to come within the terms of the Act.

*Id.* at 1190–91. This passage applies equally to this case. FCMC, like First American, never had actual control or possession of plan assets. Rather, when it determined that a disbursement should be made to a borrower, it provided funds to the borrower from its own account. Next, FCMC asked McMorgan to "sign off" on the advance. Once McMorgan approved of the advance, funds would be transferred from the pension funds to FCMC. As in *Robbins*, the Servicing

Agreements provided elaborate instructions guiding the process by which FCMC serviced the loans. Therefore, this Court, following the logic of *Robbins,* finds that, based on the Servicing Agreements alone, FCMC was not an ERISA fiduciary.

Even if FCMC had to make decisions in deciding how to conform to the process outlined in the Servicing Agreements, this does not mean that it exercised discretionary authority sufficient to satisfy the ERISA requirements. Important in deciding whether duties were ministerial or discretionary is the framework in which the servicer operates while performing its duties. For example, the Ninth Circuit has held that a third-party administrator was not a fiduciary where the administrative service agreement detailed functions that were merely ministerial. *Kyle Rys., Inc. v. Pacific Admin. Servs., Inc.,* 990 F.2d 513 (9th Cir.1993). Especially important to the court's determination was the fact that the agreement between the parties clearly stated that the administrator was to refer discretionary questions regarding the payment of claims to the plan's trustee. *Id.* at 516.

Similarly, the Eleventh Circuit has held that the performance of administrative functions within the framework set up by the plan trustee does not make an insurance company a fiduciary. *Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288 (11th Cir.1989). The court stated:

> An insurance company does not become an ERISA "fiduciary" simply by performing administrative functions and claims processing within a framework of rules established by an employer, especially if, as in this case, the claims processor has not been granted the authority to review benefits denials and make the ultimate decisions regarding eligibility.

*Id.* at 290 (citations omitted). *See also Useden,* 947 F.2d at 1575 ("An entity which assumes discretionary authority or control over plan assets will not be considered a fiduciary if that discretion is sufficiently limited by a pre-existing framework of policies, practices and procedures."); *Toomey v. Jones,* 855 F.Supp. 19 (D.Mass.1994) (company that provided plan consulting services not a fiduciary where it had no discretionary control over the disposition of plan assets);

*Haidle v. Chippenham Hosp., Inc.,* 855 F.Supp. 127 (E.D.Va.1994) (insurance company not a fiduciary even though the ability to determine benefits has been delegated to it, because trustee reserved the right to review or modify any such determination).

Moreover, the logic behind the "professional functions" doctrine with respect to ERISA fiduciary status supports a finding that FCMC was not a fiduciary in this case. Several cases have held that attorneys, accountants, actuaries, plan administrators, or consultants who render noninvestment advice to plans covered by ERISA do not become fiduciaries solely by the performance of such services. Michael J. Canan, *Qualified Retirement and Other Employee Benefit Plans* § 16.3 at 750–51 (1994). Presumably, this is because virtually any advice given by such a professional could otherwise be deemed discretionary, which would discourage professionals from providing services to ERISA plans.

The Ninth Circuit has consistently adopted this position. For example, in *Nieto v. Ecker,* 845 F.2d 868 (9th Cir.1988), the court found that an attorney was not a fiduciary because he failed to collect contributions under an ERISA plan.

> By failing to collect those contributions, the argument runs, [the attorney] dissipated those assets. This argument proves far too much. Under this rationale anyone performing services for an ERISA plan— be it an attorney, an accountant or a janitor—would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardized those assets. We find no basis for expanding the meaning of fiduciary in this fashion....

*Id.* at 870–71. *See also Yeseta v. Baima,* 837 F.2d 380, 385 (9th Cir.1988) (attorney rendering professional services to a plan is not a fiduciary so long as he does not exercise authority over plan in other than by usual professional functions); *Mertens v. Hewitt Assoc.,* 948 F.2d 607, 610 (9th Cir.1991) (a party rendering professional actuarial services to a plan is not a fiduciary if he does not exercise any authority over the plan in other than usual professional functions), *judgment aff'd on other grounds,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

While the "professional functions" doctrine has not been applied in the loan servicing context, it is instructive in helping the Court decide the issue before it. Any kind of loan servicing will invariably require some discretion (e.g., surveying the construction project to determine the status of the project). To assign every loan servicer fiduciary status, however, would ultimately prove detrimental to ERISA plans, because loan servicers would be discouraged from rendering their services to such plans. Such a result should be avoided.

■ McMorgan alternatively argues that FCMC is a fiduciary because it is a "person designated" under ERISA, 29 U.S.C. § 1105(c)(1)(B) (1985). That section provides:

The instrument under which a plan is maintained may expressly provide for procedures ... for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

McMorgan argues that it is a "named fiduciary", and that it designated FCMC to carry out fiduciary responsibilities through the Servicing Agreements.

This argument is not persuasive. Even if McMorgan is a "named fiduciary" with the power to designate other persons as fiduciaries (which FCMC disputes), there is inadequate evidence of a designation of FCMC as a co-fiduciary. Nowhere do the Servicing Agreements purport to make such a designation. Nor do the Servicing Agreements implicitly make such a designation because, as discussed previously, the duties detailed therein are ministerial, not discretionary in nature.

After examining the duties assigned to FCMC pursuant to the Servicing Agreements and analyzing the relevant case law, the Court finds that the duties outlined in the Servicing Agreements were ministerial, not discretionary. As such, the Court denies McMorgan's motion for summary adjudication declaring FCMC as a fiduciary based upon the Servicing Agreements alone. This ruling does not preclude McMorgan from establishing that FCMC took on additional duties not outlined in the Servicing Agreements that were discretionary in nature, thus making it an ERISA fiduciary.

### B.

■ FCMC argues that this action should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The standard to be applied in evaluating a Rule 12(b)(1) motion to dismiss depends upon whether the motion is (1) a facial or a factual attack and (2) whether the jurisdictional and substantive issues are so intertwined that the question of jurisdiction depends upon factual determinations going to the merits. *See* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* §§ 9:78–87, 9:98–107 (1994).

■ A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint (a "facial attack"), or it may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact (a "factual attack"). *Thornhill Publishing Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). The motion currently before the Court is a "factual attack," because the complaint is facially sufficient, alleging facts that demonstrate federal jurisdiction.

■ The question of jurisdiction is normally considered intertwined with the underlying facts of the case where the same statute provides the basis for both subject matter jurisdiction and the plaintiff's claim for relief. *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir.1983). In *Sun Valley*, the court found that the determination of whether a "franchise relationship" existed between the parties was essential to both jurisdiction and the underlying claim. *Id.* In this case, the Court must determine whether FCMC was a fiduciary under ERISA, which also provides the basis for plaintiff's claim for relief. Therefore, jurisdiction in this case is "intertwined" with the underlying dispute.

Having characterized FCMC's motion to dismiss as a factual attack intertwined with the underlying claim, the Court must ascertain the proper standard to be applied to

FCMC's motion to dismiss. In *Augustine v. United States,* 704 F.2d 1074 (9th Cir.1983), the Ninth Circuit held that:

> where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.
>
> In ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment....

Therefore, FCMC's motion must be treated as a motion for summary judgment.

■■■■■ As discussed above, whether or not a party serves as a fiduciary under ERISA depends upon the actual functions performed by the party, not just the duties described by documents. *Useden,* 947 F.2d at 1574. Therefore, this is an intensely factual inquiry, in which McMorgan may attempt to show that FCMC performed duties in addition to those outlined in the Servicing Agreements that effectively converted FCMC into a fiduciary.

Given the factual inquiry required to determine whether or not FCMC acted as a fiduciary, it would be premature to grant summary judgment in its favor at this stage of the litigation. The Court must allow McMorgan discovery because it is possible that McMorgan may be able to discover the "requisite jurisdictional facts" to support its claim that FCMC is an ERISA fiduciary. *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989). Granting summary judgment to FCMC prior to significant discovery would be premature, because the issues in this case are complicated, *Texas Partners v. Conrock Co.,* 685 F.2d 1116, 1119 (9th Cir.1982), and because the facts that may demonstrate that FCMC was a fiduciary may be in the possession of FCMC. *See International Raw Materials, Ltd. v. Stauffer Chem. Co.,* 898 F.2d 946, 949 (3d Cir.

1990). FCMC is not prohibited from bringing a motion for summary judgment at a later date.[1]

## III.

Accordingly,

IT IS HEREBY ORDERED THAT:

1. Plaintiff McMorgan's motion for summary adjudication is DENIED.

2. Defendant FCMC's motion to dismiss for lack of subject matter jurisdiction is DENIED.

---

1. Because the Court has determined that additional discovery is necessary before it can determine the question of whether FCMC took on duties that would confer fiduciary status, it need not reach the motions to strike brought by the parties.