**Mariano SANTANA, Plaintiff,**

v.

**DELUXE CORPORATION and John Hancock Mutual Life Insurance Company, Defendants.**

**Civil Action No. 94–30111–FHF.**

United States District Court,
D. Massachusetts.

March 12, 1996.

Dina E. Fein, Fein, Pearson, Emond & Fein, Springfield, MA, for Mariano Santana.

James W. Nagle, Robert M. Hale, Goodwin, Proctor & Hoar, Boston, MA, Joseph A. Piacquad, Goodwin, Proctor & Hoar, Boston, MA, for Deluxe Check Printers, Inc. and Deluxe Corporation.

C. Brian McDonald, John Kane, Bulkley, Richardson & Gelinas, Springfield, MA, for John Hancock Mutual Life Insurance Company.

*MEMORANDUM AND ORDER*

FREEDMAN, Senior District Judge.

## I. INTRODUCTION

On his own behalf, and on the behalf of all others similarly situated, plaintiff Mariano Santana ("Santana") has brought a nine-count complaint against defendants Deluxe Corporation ("Deluxe") and John Hancock Mutual Life Insurance Company ("John Hancock") claiming that Deluxe and John Hancock have denied certain health care benefits to participants of a Deluxe employee benefit plan. Solely before the Court is John Hancock's motion for summary judgment on all counts of Santana's complaint.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) declares that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the party moving for summary judgment does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2133, 128 L.Ed.2d 863 (1994). Once this showing is made, the nonmoving party must establish the existence of a genu-

ine dispute as to some material fact, or the moving party will be entitled to judgment as a matter of law. *Id.* The nonmoving party has created a genuine issue of material fact if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

### III. FACTUAL AND PROCEDURAL HISTORY

■ The Court views the record in a light most favorable to Santana, the party opposing summary judgment, and will draw all reasonable inferences in his favor. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The undisputed facts reveal that in 1982 John Hancock entered into a contract with the Benefits Administration Committee of the Deluxe Employees Health Care Plan ("BAC") whereby John Hancock agreed to provide day-to-day administrative services with respect to certain Deluxe employee benefit plans. On or around January 1, 1989, Santana, who had been employed at Deluxe since 1977, was physically unable to work and began receiving disability benefits under an employee benefit plan ("Plan") funded by Deluxe and serviced by John Hancock. In conjunction with his receipt of disability benefits, Santana was eligible for health insurance under the Plan.

In addition to benefits under the Plan, Santana's disability also qualified him for Social Security benefits. As a function of his receipt of Social Security disability benefits, Santana qualified for Medicare on or around October 1, 1990. Under "Part A" Medicare, Santana was provided insurance for hospital treatment at no cost. Under "Part B" Medicare, Santana could elect to receive insurance for physician treatment, but would be assessed a monthly premium. Santana declined to enroll in Medicare "Part B" at that time.

On December 17, 1991, December 26, 1991, and February 2, 1992, Santana incurred physician charges after visiting his dentist. Santana submitted the dental bills to John Hancock for payment under the Plan. John Hancock refused to pay the charges, inform-

ing Santana that Medicare was his primary insurance carrier and that his dental charges were subject to "coordination of benefits" under the Plan. As a result, Santana enrolled in Medicare "Part B" and began remitting the monthly premium.

Alleging that Deluxe and John Hancock coordinate health care benefits under the Plan secondary to Medicare in violation of the Social Security Act ("SSA"), Santana filed the instant action on May 10, 1994 seeking class certification and requesting relief under the SSA, the Employee Retirement Income Security Act of 1974 ("ERISA"), and state law. John Hancock moved for summary judgment on all counts of Santana's complaint on September 15, 1994. Santana opposed the motion, and John Hancock replied. After further discovery in this matter, Santana submitted further opposition to John Hancock's motion for summary judgment, and John Hancock again replied. The Court heard oral argument on John Hancock's motion for summary judgment on February 1, 1996, and the Court is now poised to rule on the motion.

### IV. DISCUSSION

John Hancock advances three main contentions in support of its motion for summary judgment. First, John Hancock maintains that it is neither the Plan's "administrator" nor a "fiduciary" of the Plan as those terms are defined in ERISA and, therefore, it is not subject to suit under ERISA. Second, John Hancock states that Santana's state contract law claim is preempted by ERISA. Third, John Hancock argues that it is not the party responsible to make benefit payments to Santana under the Plan and, therefore, it is not subject to suit under SSA for allegedly failing to pay Plan benefits primary to Medicare. The Court will analyze the evidence of record and apply it to each of John Hancock's arguments in turn to determine whether a genuine issue of material fact remains for trial.

### A. ERISA

Four counts of Santana's nine-count complaint seek relief under ERISA. John Han-

cock contends that as a third-party administrator of the Plan, it is not subject to suit under ERISA. The Court agrees.

ERISA is codified at 29 U.S.C. §§ 1001 et seq., and its civil enforcement provisions are enumerated in section 1132(a). Counts II and III of Santana's complaint are brought pursuant to section 1132(a)(1), which provides:

> A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

29 U.S.C. § 1132(a)(1)(B). Count II of Santana's complaint avers that John Hancock wrongfully denied Santana medical benefits under the Plan in violation of ERISA. Count III alleges that John Hancock failed to provide Santana with an adequate summary plan description as required by ERISA.

Count VII of Santana's complaint is brought pursuant to section 1132(a)(3), which provides:

> A civil action may be brought by a participant, beneficiary, or fiduciary ... to enjoin any act or practice which violates any provision of this title or the terms of the plan....

29 U.S.C. § 1132(a)(3). Count VII seeks an order enjoining John Hancock from paying Plan benefits secondary to Medicare.[1]

Count VIII of Santana's complaint requests attorney's fees pursuant to section 1132(g)(1).

■ ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries. With narrow exception, however, ERISA does not authorize actions against nonfiduciaries of an ERISA plan. *See Klosterman v. Western Gen. Management, Inc.,* 32 F.3d 1119, 1122 (7th Cir.1994) (opining that claim for breach of duty under ERISA only valid against fiduciary); *Reich v. Rowe,*

20 F.3d 25, 29–31 (1st Cir.1994) (allowing that nonfiduciaries may only be sued for engaging in "act or practice" proscribed by section 1106(a)(1)); *Kyle Rys. v. Pacific Admin. Servs.,* 990 F.2d 513, 516 (9th Cir.1993) (holding that relief for nonfiduciary liability only available where nonfiduciary is engaged in prohibited transaction under section 1106(a)(1)); *Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288, 289–90 (11th Cir.1990) (stating that duties of nonfiduciaries not regulated by ERISA); *see also Mertens v. Hewitt Assocs.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (reserving question of whether nonfiduciaries are subject to suit under ERISA while observing that nonfiduciaries are not specified in ERISA statute as potential defendants). Therefore, John Hancock is only a proper defendant with respect to Counts II, III, VII and VIII of Santana's complaint if it can be deemed a fiduciary of the Plan. Rising to the test, Santana vigorously argues that John Hancock is liable under ERISA as a fiduciary of the Plan.[2]

Under ERISA,

> [e]very employee benefit plan ... [must] provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

29 U.S.C. § 1102(a). In this case, the Plan names the plan administrator, Deluxe's Director of Human Resources, as the individual possessing the authority to control and manage the operation and administration of the Plan. *See* 29 U.S.C. § 1002(16)(A). Notwithstanding the fact that John Hancock is not expressly named as a fiduciary of the Plan, John Hancock may still qualify as a fiduciary with respect to the Plan to the extent that

> (i) [it] exercises any discretionary authority or discretionary control respecting management of [the Plan] or exercises any

---

1. Although Count VII does not explicitly cite ERISA, Santana's opposition to John Hancock's summary judgment motion argues that ERISA authorizes an action for equitable relief against John Hancock.

2. Santana's alternative theory that John Hancock is liable under ERISA for knowingly participating in Deluxe's breach of a fiduciary duty has been rejected by the First Circuit. *See Rowe,* 20 F.3d at 26 (finding that ERISA does not provide relief against nonfiduciaries who knowingly participate in fiduciary breach).

authority or control respecting management or disposition of [the Plan's] assets, (ii) [it] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of [the Plan], or has any authority or responsibility to do so, or

(iii) [it] has any discretionary authority or discretionary responsibility in the administration of [the Plan]....

*See* 29 U.S.C. § 1002(21)(A).

In support of its summary judgment motion, John Hancock forwards the affidavit of a John Hancock consultant[3] and its contract with BAC as evidence that it does not possess the discretionary control over the Plan necessary to qualify it as a fiduciary. The "administrative services only" contract between John Hancock and BAC, John Hancock asserts, makes explicit that John Hancock, as the Plan's benefits administrator, is merely a third-party administrator performing ministerial functions in accordance with procedures and standards established by Deluxe.

The Court's review of the contract reveals that John Hancock's overriding obligation under its agreement with BAC is to provide claims processing services to the Plan. Following guidelines and procedures set down by Deluxe while processing a claim under the Plan, John Hancock personnel are charged with certifying that a charge is covered under the Plan; preparing a claim for processing; computing benefits; issuing benefits; furnishing employees with an explanation of benefits; recording accounting and statistical data; producing statistical reports; and coordinating benefits. In addition to performing the initial examination of a claim, and computing and issuing benefits, John Hancock's claim services also include preparing the various forms required in connection with claims processing, excluding a plan description; maintaining an accounting of payments to claimants; controlling claim abuses; accumulating and analyzing basic statistics; analyzing the Plan; and, after consulting with Deluxe, making recommendations with respect to changes or modifications of the Plan. Un-

der the contract, all contested or doubtful claims are referred to Deluxe for ultimate determination of whether payment should be made on the claim, and all benefit payments are drawn on Plan funds and not from John Hancock funds. Moreover, John Hancock is powerless to alter, modify, or waive any terms or conditions of the Plan.

In situations as outlined above, where an employee benefit plan has contracted with a third party to provide claims processing and other administrative services to the plan, but has retained discretion to decide disputed claims, courts have universally ruled that the service provider is not a fiduciary of the plan. *See Harris Trust & Sav. v. Provident Life & Accident Ins. Co.,* 57 F.3d 608, 612–14 (7th Cir.1995); *Klosterman,* 32 F.3d at 1124–25; *Kyle Rys.,* 990 F.2d at 516; *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 454–56 (6th Cir. 1991); *Baker,* 893 F.2d at 290; *Toomey v. Jones,* 855 F.Supp. 19, 23–25 (D.Mass.1994); *see also* 29 C.F.R. § 2509.75–8 (D–2). Given the ministerial nature of the functions John Hancock is required to perform under its contract with BAC, the Court discerns no reason to distinguish John Hancock's relationship with the Plan from the myriad other instances where third-party service providers were found to be nonfiduciaries under ERISA.

While acknowledging that the language of the agreement between John Hancock and BAC indicates that John Hancock may not have intended to become a fiduciary of the Plan, Santana strongly contends that a question of fact remains regarding the issue of John Hancock's status as a fiduciary. Asserting that the duties spelled out in the contract do not represent the true nature of John Hancock's association with the Plan, Santana implores the Court to ignore the contract and focus instead on which party is "calling the shots" under the Plan. By looking functionally at the duties which John Hancock performs, Santana argues, it is apparent that John Hancock qualifies as an ERISA fiduciary because it is exercising dis-

---

**3.** Despite Santana's asseveration to the contrary, the Court is satisfied that the consultant's affidavit satisfies Rule 56(e) of the Federal Rules of Civil Procedure.

cretionary control respecting management and administration of the Plan.

Santana relies upon the deposition testimony of Joann Bolek ("Bolek") in support of his position that the functions performed by John Hancock render it a fiduciary of the Plan. Bolek, a John Hancock service representative, testified to the many services that John Hancock provides to the Plan. Elaborating on the plan design services that John Hancock provides to the Plan, Bolek declared:

> John Hancock analyzes the plan of benefits in order to make recommendations with respect to changes to the plan[] ... [and to] determine that the plan is keeping pace with what is happening in the benefit environment ... [and] industry standard....
>
> [We] advise our clients of changes in the law and advise them to seek their own legal counsel on how [the new legislation] may impact [the plan]....
>
> [The review of the plan is] done as there are changes in the providing of health care that could result in a change to the plan services that have never been covered before.... We contract to make recommendations in regards to plan design....

Deposition of Joann Bolek ("Bolek Deposition") at 43–44; 47; 60–61. John Hancock's recommendations regarding the design of the Plan included movement to a preferred provider organization structure; increased management of pharmacy benefits; an increased Plan deductible; and an adjustment to out-of-pocket limits. *Id.* at 87–88. As optional additional services under the contract, John Hancock also suggested that the Plan purchase the following services from John Hancock for an extra fee: access to the national transplant network; access to John Hancock's toll-free telephone line for questions regarding Plan benefits; "right of reimbursement" services to recover medical malpractice costs; and "utilization review services" to ensure that each Plan beneficiary received cost-effective health care appropriate to his

or her particular needs.[4] *Id.* at 97–100. Under the Patient Advocate Program, a patient advocate from Cost Care—a John Hancock subsidiary—provides utilization review services to the Plan. *Id.* at 51–53; 70. Bolek related that John Hancock recommended changes to the Deluxe Plan for purposes of selling new services to the Plan, allowing Deluxe to update its Plan so as to remain competitive with other plans in Deluxe's industry, and saving Deluxe money. *Id.* at 48.

As further evidence of John Hancock's fiduciary status, Santana highlights instances alleged to demonstrate John Hancock's exercise of discretion and authority with respect to the Plan. For example, Santana offers evidence that Deluxe, in conjunction with John Hancock, drafted the employee benefit booklet *Checking In With Deluxe.* This booklet was reviewed, commented upon, and approved by John Hancock. Additionally, Santana submits a letter in which John Hancock recommended that the Plan maintain coverage for physical therapy claims. Another letter produced by Santana establishes that Deluxe solicited John Hancock for advice regarding whether the Plan should cover high-risk medical procedures. This letter indicated that before making a coverage decision, Deluxe would rely heavily upon John Hancock's recommendation. Santana also emphasizes the legislative advice that John Hancock furnishes to Deluxe. Specifically, Santana points to recommendations and guidelines provided by John Hancock to Deluxe respecting Medicare and the coordination of Plan benefits with Medicare and other health care legislation.

Lastly, Santana argues that John Hancock makes decisions respecting benefits which necessarily impact the disposition of Plan assets. First, Santana states that under the contract John Hancock retains sole discretion to determine whether to settle or compromise any suit brought against it for a failure to pay benefits under the Plan. Second, targeting the Patient Advocate Program administered by John Hancock's subsidiary

---

4. Apart from the contract, Deluxe participated in *The Continued Protection Health Insurance Trust* ("CP Trust"), a separate insurance plan funded by John Hancock and made available to Deluxe employees who no longer qualified for benefits

under the Plan. *See* Bolek Deposition at 105–07. The Court finds irrelevant all evidence relating to the CP Trust, as the CP Trust is wholly unrelated to the Plan under which Santana seeks recovery in this suit.

Cost Care, Santana contends that John Hancock is a fiduciary because its patient advocate makes threshold determinations as to which course of treatment is appropriate, and most cost-effective, for a Plan participant. Third, given the fact that John Hancock is compensated for its services according to a percentage of the dollar amount paid on claims under the Plan, Santana argues that John Hancock's decision of whether to pay a claim directly affects Plan finances.

Having reached the top of the mountain of evidence amassed by Santana detailing John Hancock's administration of the Plan, the Court observes that he cites no case authority supporting his contention that John Hancock's activities render it a fiduciary under ERISA. The starting point for many courts trying to determine whether a particular party is a fiduciary with respect to an ERISA plan has been the Department of Labor's interpretative regulations respecting fiduciary responsibility. *See Toomey*, 855 F.Supp. at 23–24 (stating that DOL construction of its own regulations entitled to considerable weight); *see also* 29 C.F.R. § 2509.75–8(D–2). After analyzing those regulations and relevant case law, and upon thorough review of the record, the Court concludes that Santana has not come forward with sufficient evidence to create a genuine issue of material fact regarding John Hancock's fiduciary status.

One court has stated:

An insurance company does not become an ERISA "fiduciary" simply by performing administrative functions and claims processing within a framework of rules established by an employer ... especially if, as in this case, the claims processor has not been granted the authority to review benefits denials and make the ultimate decisions regarding eligibility.

*Baker*, 893 F.2d at 290 (citations omitted). Indeed, the power to act for a plan and institute plan policies is essential to status as a fiduciary under ERISA. *See Klosterman*, 32 F.3d at 1123 (quoting *Associates in Adolescent Psychiatry v. Home Life Ins. Co.*, 941

F.2d 561, 570 (7th Cir.1991), *cert. denied*, 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992)); *see also* 29 C.F.R. § 2509.75–8(D–2). All evidence of record in this case points to the fact that John Hancock processed claims pursuant to rules, policies, and procedures established by Deluxe for administration of the Plan. Absent from Santana's proof is any evidence challenging John Hancock's showing that it is powerless to alter, modify, or waive any terms or conditions of the Plan on behalf of Deluxe. Santana has also failed to put in issue John Hancock's showing that Deluxe retains ultimate decision-making authority over the payment of claims against the Plan. The evidence of record leads to no reasonable conclusion other than that John Hancock's discretion while performing administrative services to the Plan is restrained, both on paper and in practice.

The bulk of Santana's evidence outlines various advisory functions that John Hancock performs on behalf of the Plan. Clearly, in addition to claims processing services, John Hancock does provide extensive plan design services to the Plan. John Hancock's duties in providing plan design services, however, do not entail setting policy or adopting procedures for the administration of the Plan. The evidence shows that John Hancock merely renders advice regarding the structure of Plan benefits, advises the Plan on current laws impacting employee benefit plans, and makes recommendations as to which services would make the Plan most cost effective.[5] Making recommendations respecting plan administration is not indicative of fiduciary status. *Toomey*, 855 F.Supp. at 24; 29 C.F.R. § 2509.75–8(D–2). The Court concludes, therefore, that John Hancock's performance of plan design services lacks the discretionary authority in the administration of an employee benefit plan necessary to qualify it as a fiduciary under ERISA.

Turning to an analysis of the other services John Hancock provides to the Plan, the Court recognizes that urging the

---

5. Santana has not shown that John Hancock somehow controls or dictates which services the Plan will accept. Apparently, based on the evidence of record, Deluxe and the Plan are free to reject any of John Hancock's suggestions.

purchase of an insurance company's plan services does not make that company a fiduciary with respect to those services. *American Fed'n of Unions v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 664 (5th Cir.1988); *see also Consolidated Beef Indus. v. New York Life Ins. Co.*, 949 F.2d 960, 964–65 (8th Cir. 1991) (holding that salesman of company's financial products not fiduciary to ERISA plan), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992). Therefore, the fact that John Hancock suggested that the Plan obtain several other John Hancock services, including treatment-screening services through Cost Care, is not probative of John Hancock's fiduciary status. Again, as with plan design services, John Hancock has no control over whether Deluxe will accept or reject its advice to maintain these optional services.

■ The Court also places little evidentiary value in the facts that John Hancock retains discretion to defend suits brought against it under the Plan, and that it is compensated based on total claims paid under the Plan. Neither fact reveals the type of discretion over the disposition of plan assets consistent with an ERISA fiduciary. *See Useden v. Acker*, 721 F.Supp. 1233, 1243 (S.D.Fla.1989) (observing that cases in which service provider found to be fiduciary involved facts where service provider exercised broad control over plan assets); *see also Harris*, 57 F.3d at 613 (ruling that claims administrator not fiduciary where lacked authority to decide disputed and nonroutine claims); *Baxter*, 941 F.2d at 456 (holding that claims processor that pays claims in accordance with terms of plan not ERISA fiduciary).

■ Santana's last pitch alleges that John Hancock is a fiduciary under the Plan because it communicates with Plan participants regarding Plan benefits and therefore acts to satisfy the plan administrator's obligation to provide information. *See Willett v. Blue Cross & Blue Shield*, 953 F.2d 1335, 1340 (11th Cir.1992) (noting that ERISA allows fiduciary to delegate fiduciary duty). Santana cites John Hancock's obligation to prepare the various claims processing forms and submits John Hancock's letter rejecting his 1992 claim for dental benefits as proof that John Hancock communicates with Plan participants. Preparing benefits forms and communicating with employees regarding benefits are, however, functions typically performed by a claims processor, and are not indicative of fiduciary status. *See Baxter*, 941 F.2d at 455 (citing 29 C.F.R. § 2509.75–8(D–2)).

At bottom, Santana has not produced evidence from which a reasonable factfinder could conclude that John Hancock is a fiduciary of the Plan. For this reason, summary judgment will be granted on Counts II, III, VII, and VIII of Santana's complaint.

## B. Breach of Contract

■ Count IV of Santana's complaint asserts a breach of contract claim against John Hancock for failure to pay benefits under the Plan. John Hancock moves for summary judgment on this count, arguing that Santana's common law contract action is preempted by ERISA. *See* 29 U.S.C. § 1144(a). Recognizing the expansive sweep of ERISA's preemption provision, and given the fact that Santana has not contested John Hancock's showing that his breach of contract claim is preempted, the Court will grant summary judgment on Count IV. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987) (holding that state breach of contract action preempted because it relates to employee benefit plan).

## C. SSA

Counts V, VI, and IX of Santana's complaint seek relief under the "Medicare as secondary payer" ("MSP") provisions of the SSA. *See* 42 U.S.C. § 1395y(b). Counts V and VI generally allege that John Hancock failed to provide benefits under the Plan because it improperly took into account that Santana is eligible for Medicare. Accordingly, under Count IX, Santana seeks double damages for John Hancock's failure to provide benefits primary to Medicare.

John Hancock moves for summary judgment on Counts V, VI, and IX stating that it is not subject to suit under the MSP section of the SSA. Medicare is designed to be the

secondary payer of benefits in situations where "payment has been made, or can reasonably be expected to be made" with respect to an item or service covered under a group health plan. *See* 42 U.S.C. § 1395y(b)(2)(A)(i). Accordingly, the MSP provisions of the SSA provide:

> A large group health plan ... may not take into account that an individual ... who is covered under the plan by virtue of the individual's current employment status with an employer is entitled to benefits under this title. ... .

*See* 42 U.S.C. § 1395y(b)(1)(B)(i). To encourage compliance with these requirements, Congress has authorized a private cause of action against a group health plan which fails to provide primary payment pursuant to the terms of its plan. To this end, section 1395y(b)(3)(A) of Title 42 of the United States Code provides:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with such paragraphs (1) and (2)(A). ...

42 U.S.C. § 1395y(b)(3)(A).

 Construing these provisions, the Court concludes that a private action to recover damages flowing from a group health plan's failure to pay primary to Medicare may be brought only against the plan and the entity responsible for funding the plan. *Cf.* 42 U.S.C. § 1395y(b)(2)(B)(ii) (providing that United States authorized to recover Medicare payments via action against any entity required or responsible to pay primary). In this case, it is undisputed that Deluxe, and not John Hancock, is the party responsible for funding the group health plan through which Santana claims benefits. The Plan is self-funded by Deluxe; all claims under the Plan are paid with Deluxe funds whereas John Hancock provides administrative services, but no funds, to the Plan. Therefore, as a matter of law, Santana cannot maintain an action against John Hancock for purport-

edly failing to pay Plan benefits primary to Medicare. *Cf. Health Ins. Assoc. of America, Inc. v. Shalala*, 23 F.3d 412, 417 (D.C.Cir.1994) (holding that insurance companies acting as third-party administrators to group health plans not subject to Medicare recovery actions brought by government), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1064 (1995).

The Court rejects Santana's invitation to read the private enforcement provision contained in the MSP section more expansively. Without citing supporting case authority, Santana argues that a private action should be permitted against the entity or entities actually responsible for a plan's *failure* to pay primary to Medicare. Predictably, Santana contends that John Hancock's significant management and control over the Plan, as well as its legislative advice to Deluxe regarding the coordination of Plan benefits with Medicare, renders it responsible for the Plan's failure to cover Santana's dental bills primary to Medicare. Unfortunately for Santana, neither the facts nor the law support his argument. Santana has not shown that John Hancock does more than make recommendations regarding the terms of the Plan, nor has he shown that John Hancock in any way funds the Plan under which Santana was allegedly denied health benefits. Consequently, summary judgment will enter on Counts V, VI, and IX of Santana's complaint.[6]

## V. CONCLUSION

For the above-stated reasons, John Hancock's motion for summary judgment is GRANTED on all counts of Santana's complaint.

It is So Ordered.

---

**6.** Having granted summary judgment as to every substantive claim against John Hancock, the Court will grant summary judgment for John Hancock on Count I of Santana's complaint seeking determination as a class action.