Ann M. KODES and Robert V. Kodes, Plaintiffs,

v.

WARREN CORPORATION, Liberty Life Assurance Company of Boston and Diane Wing, Defendants.

Civil Action No. 97–11441–KPN.

United States District Court, D. Massachusetts.

Sept. 11, 1998.

Terrence A. Low, Rosen, Greenhut, Catugno & Low, Springfield, MA, for Plaintiffs.

Kevin D. O'Leary, Cummings & Lockwood, Hartford, CT, Daniel H. Rider, Jr., Longmeadow, MA, for Defendants.

*MEMORANDUM WITH REGARD TO DEFENDANT WARREN CORPORATION and DIANE WING'S MOTION TO DISMISS (Docket No. 34), DEFENDANT LIBERTY LIFE ASSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (Docket No. 37) and PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 39)*

NEIMAN, United States Magistrate Judge.

Robert V. Kodes ("Kodes") and Ann M. Kodes (together "Plaintiffs") have sued Warren Corporation ("Warren"), Liberty Life Assurance Company of Boston ("Liberty") and Diane Wing ("Wing") (together "Defendants") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Kodes, a former employee of Warren, seeks to obtain payment under the Group Benefits Plan sponsored by Warren and administered by Liberty for medical services rendered to his wife, Ann Kodes.

In a six count complaint, Plaintiffs allege violations of both ERISA and Connecticut law and have filed a motion for summary judgment on three of those counts, Counts

IV, V and VI, each of which asserts a state law claim. Plaintiffs have also asked the court to sanction Defendants for their failure to provide certain plan information as required by ERISA. In turn, Liberty has filed a cross motion for summary judgment with respect to all six counts. Similarly, Warren and Wing have filed a motion to dismiss all of Plaintiffs' claims, which motion, with the agreement of all the parties, has been converted to one for summary judgment.

The parties have consented that the matter be heard by the court pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b). For the following reasons, the court will deny Plaintiffs' motion, allow Liberty's motion and grant Warren and Wing's motion in part.

## I. SUMMARY JUDGMENT STANDARD

In accordance with Fed.R.Civ.P. 56(c), summary judgment will be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Magee v. United States,* 121 F.3d 1, 3 (1st Cir.1997). Once the moving party has demonstrated that no genuine issue of material fact exists, the burden is on the opposing party to contradict that demonstration by coming "forward with specific provable facts which establish that there is a triable issue." *Aponte Matos v. Toledo Davila,* 135 F.3d 182, 186 (1st Cir.1998). A genuine issue is one which a reasonable fact finder could resolve in favor of the non-moving party. *Id.*

Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the non-movant that the materiality hurdle is cleared." *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir.1997) (internal quotations omitted).

The facts are to be viewed in a light most favorable to the non-movant. *Dykes v. De-Puy, Inc.,* 140 F.3d 31, 36 (1st Cir.1998). When deciding cross motions for summary judgment, the court must consider each motion separately and draw inferences against each movant in regard to their respective motions. *Reich v. John Alden Life Ins. Co.,* 126 F.3d 1, 6 (1st Cir.1997). *See also Blackie v. State of Maine,* 75 F.3d 716, 721 (1st Cir.1996). Summary judgment may be granted when there is no dispute as to any material fact and only questions of law remain. *See id.*

## II. FACTUAL BACKGROUND

Kodes was an "active full-time employee" at Warren and eligible for coverage under Warren's Group Benefits Plan ("Plan"). (Rec. for Jud. Rev. (Docket No. 45) Exhibit F; Pl. Mem. Opp. Summ. Judg. (Docket No. 54) Kodes Aff. ¶ 2.) The Plan was administered by Liberty. (Def. Warren State. Mat. Facts (Docket No. 36) Cornish Aff. ¶ 4.) Defendants maintain that, as Plan participants, Plaintiffs received a Summary Plan Description. (Id.)

On April 5, 1989, Kodes sustained a work related injury, after which he was unable return to work on a regular basis. (Kodes Aff. ¶ 2.) Warren's workers' compensation carrier, The Hartford Insurance Group, provided Kodes with weekly disability benefits. (Id. ¶¶ 2 and 3.)

Plaintiffs represent that, after Kodes' injury, they continued to receive medical coverage under the Plan sponsored by Warren and administered by Liberty. Payments were made for medical services rendered to Ann Kodes on July 7, 1993, as well as for prescription drugs through November 15, 1993. (Pl. Opp. Mem. Summ. Judg. Exhibit 1 Low Aff. at attachments.) Payments were also made for Plaintiffs' daughter's medical treatment on August 1 and September 29, 1993. (Id.)

According to Warren, Plaintiffs were covered by the Plan as long as they continued to make a ten dollar weekly contribution. (Cornish Aff. ¶ 5.) Under the Plan, coverage would expire the last day of the last period during which a participant failed to make the required contribution. (Rec. for Jud. Rev. Exhibit F.) Plaintiff did not contribute to the Plan after August 11, 1990, and was notified "several times" that he was required to make this contribution. (Cornish Aff. ¶ 5.) Nonetheless, Warren continued coverage for Kodes and his dependents until September

30, 1993, at which time Warren claims to have terminated benefits because of non-payment. (Id.¶ 6.)

At some point, the exact date being unclear, Liberty sent Warren an "ADJUSTMENT INDEX" for the period between October 1 and October 31, 1993, which indicated that Kodes, and in turn his dependents, were terminated as of October 1, 1993. (Rec. for Jud. Rev. Exhibit C.) At about the same time, Warren completed a "TRANSMITTAL FORM," apparently sent "To Paid Prescriptions, Inc.," indicating the same. (Id. Exhibit D.)

In November 1993, Ann Kodes was seen by Dr. Demosthenes Dasco at the Neurosurgical and Neurological Group. Dr. Dasco diagnosed her with a brain tumor and recommended surgery. (Pl. Mem. Opp. Summ Judg. Ann Kodes Aff. ¶ 2.) Surgery was performed at Baystate Medical Center on November 11, 1993. (Id.¶ 8.) Plaintiffs' version of the events differ significantly from Defendants' from this point forward.

According to Plaintiffs, on or about November 4, 1993, Dr. Dasco's assistant called Liberty and received verbal approval for Ann Kodes' medical treatment. (Id.¶ 3.) As promised, Dr. Dasco, as well as Plaintiffs, received confirmation telegrams on or about November 9, 1993. (Id.¶ 4.)

Sometime thereafter, Liberty sent Warren a number of Explanation of Benefits forms which indicated that claims for medical services rendered Ann Kodes between October 25, 1993, and April 8, 1994, were denied. These forms were dated November 18, 1993, through May 11, 1994. (Def. Prop. Rec. (Docket No. 46) Exhibit E.) The transmittal forms stated that "THESE SERVICES WERE INCURRED AFTER TERMINATION OF COVERAGE." (Id.) The forms then explained as follows:

> IF YOUR CLAIM IS DENIED, IN WHOLE OR IN PART, YOU HAVE THE RIGHT TO HAVE THE PLAN REVIEW AND RECONSIDER YOUR CLAIM. A WRITTEN APPEAL MUST BE MADE WITHIN 60 DAYS OF THE RECEIPT OR DENIAL, AND SENT TO THE ADDRESS SHOWN ABOVE.

(Id.) Plaintiff did not appeal or otherwise contact Warren. (Cornish Aff. ¶ 8.) The last medical services provided to Ann Kodes which were covered by Warren were rendered on September 13, 1993. (Def. Prop. Rec. Exhibit E.)

In a February 26, 1997 letter, Plaintiffs requested certain Plan information from Liberty. (Pl. Mem. Opp. Summ. Judg. Exhibit 2.) No response was received. In a February 27, 1997 letter, Plaintiffs also requested Plan information from Warren's plan administrator, Diane Wing. (Rec. for Jud. Rev. Exhibit A). Unable to reach Plaintiffs by telephone, Warren faxed them a letter dated April 10, 1997, requesting additional information. (Id. Exhibit B.) Plaintiffs did not respond. (Derby Aff. (Docket No. 36) ¶ 14.) Warren finally sent the requested Plan information for 1992, 1993 and 1994 to Plaintiffs on December 29, 1997, after suit had been commenced. (Pl. Mem. Opp. Summ. Judg. Exhibit 5.)

## III. DISCUSSION

Plaintiffs seek summary judgment on their state law claims, Count IV, V and VI. Plaintiffs maintain that they are entitled to summary judgment because Defendants failed to comply with the requirements of certain Connecticut statutes governing medical insurance. In response, Warren and Wing (together "Warren") seek summary judgment with respect to those same three counts, asserting that Plaintiffs' claims are preempted by ERISA. Since they are inextricably intertwined, Warren's and Plaintiffs' cross motions for summary judgment will be addressed together.

### A.

■ As a preliminary matter, the court is confronted with Plaintiffs' assertion that Defendants may not even have been providing coverage under an ERISA-governed plan for the time period in question. If true, Plaintiff's assertion would undermine their claims in Count I and III of their complaint that Defendants, in violation of ERISA, failed to notify Plaintiffs of termination of coverage, failed to adequately disclose steps for administrative review, and breached their fiduciary

duties. Be that as it may, the court addresses Plaintiffs' assertion that an ERISA-governed plan, and therefore ERISA preemption, may not be in issue.

There is no dispute that, while Kodes was an "active full-time employee" with Warren, he was a "covered employee" within the meaning of Warren's Plan and that the Plan was subject to ERISA. There is also no dispute that, when Kodes was no longer an active full-time employee and was receiving workers' compensation benefits, Warren continued to provide health insurance coverage.

Plaintiffs, however, present an "alternative plan theory." In essence, Plaintiffs argue that, after Kodes' injury, they were neither covered by an ERISA plan nor the recipients of coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 et seq. Rather, Plaintiffs maintain, they received health insurance pursuant to a Connecticut statute which requires employers to continue medical coverage to employees receiving workers' compensation. See C.G.L. § 31–284b. Plaintiffs, however, have provided no evidence to the court in support of their theory that the coverage changed when Kodes started to receive workers' compensation. Without such evidence, the court has no choice but to conclude that, as Defendants have demonstrated, Plaintiffs were covered under the existing ERISA plan and that their coverage remained the same until it was terminated. The crux of the issue before the court is the date and adequacy of the notice of termination.

### B.

ERISA governs plans which provide employees with "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability [or] death" whether benefits are provided "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1). ERISA explicitly preempts state law with circumscribed exceptions. Specifically, 29 U.S.C. § 1144(a) provides that ERISA "shall supersede any and all state laws insofar as they relate to any employee benefit plan covered by the statute." ERISA broadly defines state law

as inclusive of "all laws, decisions, rules, regulations or other state actions having the effect of law." See 29 U.S.C. § 1144(c)(1). As the Supreme Court has explained, Congress intended to protect plan participants and beneficiaries through preemption by providing for uniformity amongst plans. Congress also intended that preemption minimize administrative and financial burdens on participating plans by alleviating the need to comply with potentially conflicting state laws. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98–99, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

In Shaw, the Supreme Court held that, consistent with Congressional intent, a state statute "relates to" an ERISA plan "if it has a connection with or reference to such a plan." Shaw, 463 U.S. at 97, 103 S.Ct. 2890. Subsequently, the Court clarified that not every state statutory "connection" or "reference" to a plan results in preemption. See New York State Conference of Blue Cross, 514 U.S. at 656, 115 S.Ct. 1671. Indeed, a general presumption still exists against federal law preempting state law. Id. Accordingly, in addition to looking at whether a state statute "relates to" an ERISA covered plan, a court must examine the purpose of the law under consideration. Id.

In Count VI, Plaintiffs assert that Defendants failed to comply with C.G.L. 700c § 38a–537, which requires that an employer give a fifteen days notice of cancellation or discontinuation of an employee's health insurance coverage. Violation of this law results in liability for coverage. Plaintiffs argue that this statute does not relate to an ERISA-covered employee benefit plan and, thus, is not preempted.

The Supreme Court has held, however, that a state law is preempted by ERISA when that law 1) mandates administrative requirements or 2) provides alternative enforcement mechanisms for enforcing rights governed under ERISA. New York State Conference of Blue Cross, 514 U.S. at 658,

115 S.Ct. 1671. Here, the Connecticut statute does both. It imposes upon employee benefit plans an administrative requirement of fifteen days notice of the termination of health insurance coverage and creates liability for coverage if an employer does not comply with such notification requirements.[1]

Plaintiffs also allege in Count VI that Defendants failed to comply with C.G.L. 568 § 31–284b.[2] That law requires an employer to continue providing equivalent health insurance coverage to an employee who is receiving workers' compensation. It is this statute on which Plaintiffs based their "alternative plan theory." Plaintiffs argue that the statute is exempted from preemption in that such alternative plans are maintained solely for the purpose of complying with applicable workers' compensation laws. *See* 29 U.S. § 1003(b)(3).

Plaintiffs' claim to the contrary, the court finds that C.G.L. 568 § 31–284b is preempted by ERISA. The statute is analogous to a District of Columbia statute which the Supreme Court declared to be preempted. *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992).[3] The Court reasoned that the D.C. statute presumed that an employee previously covered under an ERISA-governed plan could continue to receive comparable coverage "at the same benefit level." *Id.* at 130, 113 S.Ct. 580. As a result, the state statute specifically related to the ERISA plan. The Court explicitly rejected the argument that the statute fell within the exception for state laws that are "maintained solely for the purpose of complying with applicable workmen's compensation laws." 29 U.S.C. § 1003(b)(3). The Court explained that once the state statute specifically referred to an ERISA covered plan, it was preempted. *See Greater Washington Bd. of Trade*, 506 U.S. at 130–31, 113 S.Ct. 580 (citing *Alessi v. Raybestos–Manhattan Inc.*, 451 U.S. 504, 525, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). "Such employer-sponsored health insurance programs are subject to ERISA regulation … and any state law imposing requirements by reference to such covered programs must yield to ERISA." *Greater Washington Bd. of Trade*, 506 U.S. at 130–31, 113 S.Ct. 580.

Connecticut's statute is no exception. It requires employers to "prove to the employee equivalent insurance coverage" while receiving workers' compensation. Moreover, it mandates a level of coverage measured by the benefits provided by the ERISA-governed plan. As a result, it is preempted. The Connecticut Supreme Court itself has so ruled. *See Luis v. Frito Lay, Inc.*, No. S.C. 14536 (Conn. Apr. 27, 1993). The court therefore finds that the state statutory claims in Count VI are preempted as a matter of law.

1. In an advisory opinion, the United States Department of Labor ("DOL") has expressly agreed that this particular statute is preempted by ERISA. The DOL reasoned as follows:

 This mandate of administrative duties directly affects the operation of the employer's plan and the plan's administrative processes. By imposing liability on an employer that misappropriates employees' wages intended for group health insurance coverage, subsection (c) establishes an alternative enforcement mechanism in addition to that provided by ERISA's civil enforcement provisions. These requirements have a connection with ERISA-covered plans and "relate to" plans covered by ERISA within the meaning of section 514(a). (Def. Mem. Supp. Summ. Judg. (Docket No. 44) Exhibit 3.) While advisory opinions are not binding, courts give them great deference. *See Rosario–Cordero v. Crowley Towing and Transp. Co.*, 850 F.Supp. 98, 101 n. 4 (D.P.R.1994) (citing *Massachusetts v. Morash*, 490 U.S. 107, 116, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989)).

2. The statute specifically provides as follows:

 In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer who provides accident and health insurance … coverage for any employee … shall provide to the employee equivalent insurance coverage … while the employee is eligible to receive or is receiving compensation pursuant to this chapter.

3. The District of Columbia Workers' Compensation Equity Amendment Act of 1990, 37 D.C.Reg. 6890 (Nov.1990), amended, amongst several portions of the workers' compensation law, D.C.Code Ann. §§ 36–301 to 36–345 2(c)(2):

 Any Employer who provides health insurance coverage for an employee shall provide health insurance coverage equivalent to the existing health insurance coverage of the employee while the employee receives or is eligible to receive workers' compensation benefits under this chapter.

 D.C.Code Ann. § 36–307(a–1)(1)(Supp.1992).

■ The court also finds that Plaintiffs' claims in Counts IV and V, in which Plaintiffs contend that Defendants cannot deny them health insurance coverage under state common law theories of promissory estoppel and waiver, are preempted as well. The Supreme Court has specifically held that state common law breach of contract and tort claims that relate to an ERISA-covered plan are preempted. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). *See also Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 199 (1st Cir.1997); *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 794 (1st Cir.1995). *Toomey v. Jones*, 855 F.Supp. 19, 27 (D.Mass.1994). As described, when a state law relates to an ERISA plan's administrative requirements or provides alternative enforcement mechanisms for rights governed under ERISA, it is preempted. *See New York State Conference of Blue Cross*, 514 U.S. at 658, 115 S.Ct. 1671. Plaintiffs' claims for promissory estoppel and waiver, in which Plaintiffs take issue with the initial approval and subsequent denial of benefits, relate to Warren's and Liberty's administration of the Plan. Allowing these claims to go forward would provide an enforcement mechanism other than those allowed under ERISA.

■ In sum, the court will grant summary judgment for Warren on Plaintiffs' state statutory and common law claims in Counts IV, V and VI.[4]

### C.

■ Liberty has moved for summary judgment on Counts I and III, both of which are grounded in claimed violations of ERISA. Both counts assume that Liberty is a fiduciary of the Plan and, thus, answerable for ERISA violations. In its motion, however, Liberty claims that it is not a Plan fiduciary and that only Warren, the Plan fiduciary, can be subject to ERISA requirements.

ERISA's enforcement provisions provide that a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his Plan, to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). *See Waters Corp. v. Millipore Corp.*, 140 F.3d 324, 326 (1st Cir.1998). A civil action may be brought by a participant or beneficiary for breach of fiduciary duty. *See* 29 U.S.C. § 1132(a)(2). ERISA defines a fiduciary as one who:

> (i) ... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) ... renders investment advise for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has authority or responsibility to do so, or (iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

■ The First Circuit has held that, with narrow exceptions, plan participants are not allowed to bring suit against non-fiduciaries for a fiduciary breach. *Reich v. Rowe*, 20 F.3d 25, 29 (1st Cir.1994) (allowing that non-fiduciaries may only be sued for engaging in an "act or practice" proscribed by section 1106(a)(1)). *See also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262–63, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (holding that ERISA does not allow plan participants to bring civil actions for monetary damages against non-

---

4. The court rejects Plaintiffs' request for penalties against Warren for failure to provide Plan documents. ERISA provides that "[a]ny administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary may in the court's discretion be personally liable to such participant or beneficiary." 29 U.S.C. § 1132(c). However, the statute allows plan administrators to avoid penalties when "such failure or refusal results from matters reasonably beyond the control of the administrator ..." *Id.* Plaintiffs requested information relating to the Plan in a letter dated February 27, 1997. Despite Warren's good faith efforts to respond to their requests, Plaintiffs did not respond to Warren's telephone calls or letters. (*See* Docket No. 45 Exhibit B.) Accordingly, the court will not exercise its discretion to hold Warren liable for any failure to provide information to Plaintiffs.

fiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty); *Santana v. Deluxe Corp.*, 920 F.Supp. 249, 253 (D.Mass.1996) (third party administrator who only performed ministerial functions was not a fiduciary). When a plan administrator retains discretion to determine the outcome of disputed claims, a third party administrator, even one who makes the initial claim determination, is not a fiduciary. *See Terry v. Bayer Corp.*, 145 F.3d 28 (1st Cir.1998).[5]

Liberty claims that, as a third party administrator who provides professional services, it is not a fiduciary of the plan. *See generally Rowe*, 20 F.3d at 32 ("those who only lend professional services to a plan without exercising any control, or transacting with, plan assets" are not liable for breach of fiduciary duties). The court agrees. In short, Liberty has demonstrated that it simply processed claims without retaining any discretionary authority or control.

The record shows that Warren contracted with Liberty in an Administrative Risk Management Agreement ("ARM") to provide administrative services. (Rec. for Jud. Rev. Exhibit H.) Liberty promised to provide claims processing, cost analysis, pre-admission certification and payment of claims from an established fund. (Id. Exhibits G and H.) As the sponsor of the Plan, Warren retained "final authority and responsibility for the Plan and its operation." (Id. at Exhibit H.) Warren and Liberty specifically agreed that "Liberty is neither the Administrator, a Fiduciary nor a Named Fiduciary of the Plan for purposes of [ERISA] or any state law of a similar nature." (Id.) Thus by the express terms of their agreement, Warren was the Plan fiduciary.

Granted, Liberty thought its administration of "LibertyReview," determined whether participants were entitled to inpatient hospital treatment and certain outpatient services.

However, while LibertyReview approved medical services for participants in the Plan, Warren, as the Plan sponsor, retained the right to reconsideration and to review the appeal.[6] It is clear by agreement and practice that Warren retained the discretion to make benefit determinations and that Liberty did not act as a Plan fiduciary and, thus, is not liable under ERISA. Accordingly, Liberty's motion for summary judgment will be allowed.[7]

### D.

In its motion for summary judgment, Warren also challenges Plaintiffs' remaining counts, Counts I and III, which raise ERISA-based claims. In essence, Warren contends that both counts are barred by the applicable statute of limitations.

In Count I, Plaintiffs assert that Defendants failed to pay benefits pursuant to the Plan, to notify them regarding termination of coverage, and to provide them with Plan information regarding the appropriate administrative appeal procedure. In response, Warren argues that they are entitled to judgment as a matter of law because Plaintiffs' claims are barred by the statute of limitations. In making this argument, Warren assumes that Plaintiffs received notification regarding the denial of benefits as well as termination of the Plan.

The court has previously recognized that a limitations period may be established by the benefits plan itself. *I.V. Servs. of Am., Inc. v. Inn Dev. & Management, Inc.*, 7 F.Supp.2d 79, 86 (D.Mass.1998) (under Massachusetts law, contracting parties can agree to a statute of limitations for causes of action so long as it is reasonable) (citing *Hays v. Mobil Oil Corp.*, 930 F.2d 96, 100 (1st Cir. 1991)). Here, the Plan requires participants

---

5. A DOL advisory opinion on this subject also states that a third party administrator who processes claims does not have any inherent discretionary authority or control over the management of a plan and thus is not a fiduciary. *See* 29 C.F.R. § 2509.75–78, D–2 (1997).

6. Reconsideration. The Sponsor will notify any covered person whose claim is denied in whole or in part ... If the claimant does not agree with

the reasons given, he or she may request a reconsideration of the claim. To do so, the claimant should write to the Sponsor .... 

(Rec. for Jud. Rev. Exhibit F.)

7. Given that Liberty was not a fiduciary to the Plan, the court does not find Liberty subject to penalties for failure to provide requested Plan information to Plaintiffs.

to bring a cause of action regarding a denial of benefits within three years.[8] Plaintiffs challenge Warren's assertion in the instant matter that the applicable limitations period is established in the Plan, as amended.

ERISA requires that every employee benefit plan "provide adequate notice in writing to any participant or beneficiary whose claim under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant ..." 29 U.S.C. § 1133. If a participant does not receive adequate notice, he cannot be barred by the statute of limitations established by a plan. *See Epright v. Envtl. Resources Management, Inc. Health and Welfare Plan,* 81 F.3d 335 (3rd Cir.1996) ("When a letter terminating or denying Plan benefits does not explain the proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered."); *White v. Jacobs Engineering Group Long Term Disability Benefit Plan,* 896 F.2d 344, 350 (9th Cir.1989) (when a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered). Warren maintains that Plaintiffs received a denial of benefits as early as November 18, 1993, but no later than May 11, 1994. Plaintiffs filed this cause of action on June 26, 1997, more than three years after the latest possible notice of May 11, 1994.

The court finds, however, that Warren cannot demonstrate as a matter of law that Plaintiffs received these notices. What the evidence shows instead are notices "ISSUED BY LIBERTY LIFE ASSURANCE COMPANY OF BOSTON ON BEHALF OF THE SPONSOR" and defined as an "EXPLANATION OF BENEFITS FOR WARREN CORPORATION ATTN: JOAN BENOIT." There is no indication that these notices were addressed to or received by Plaintiffs. Thus, an issue of fact remains as to whether Plaintiffs received the "written proof of loss" or the denial of benefit notices as required under the terms of the Plan. Without adequate notice, the limitations period did not begin to run.

8. Actions at Law. No legal action may be brought to recover on this plan until 60 days after due proof of loss has been given. No such action may be brought after 3 years from the time

Warren perseveres, maintaining that it is entitled to summary judgment on Count I if Plaintiffs failed to exhaust their administrative remedies regarding the denial of benefits. ERISA requires that a plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Usually, a claimant is required to exhaust such procedures before filing an action with the court. *See Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir.1988) (holding that exhaustion is required except in instances when the administrative procedures are futile or the remedy inadequate). However, there are exceptions to the exhaustion requirement when a claimant has not received a notice of denial or has received inadequate notice. *McLean Hosp. Corp. v. Lasher,* 819 F.Supp. 110, 122 (D.Mass.1993) (citing *DePina v. Gen. Dynamics Corp.,* 674 F.Supp. 46, 49 (D.Mass.1987)) (there exists an exception to the exhaustion requirement when "the claimant is wrongfully denied meaningful access to the procedures"); *Corsini v. United Healthcare Corp.,* 965 F.Supp. 265, 269 (D.R.I.1997) ("Because the exhaustion requirement rests on the assumption that notice of denial has been provided, a fiduciary who has not provided notice that benefits have been denied is foreclosed from insisting upon exhaustion of administrative remedies."); *Hemphill v. Unisys Corp.,* 855 F.Supp. 1225, 1239 (D.Utah 1994) ("Without a determination or written notice of denial, further appeal was not an available remedy."). Here, an issue of fact remains as to whether Plaintiffs received notice of the denial of benefits. Thus, the court will deny Warren's motion regarding Count I based on its claim that Plaintiffs failed to exhaust their administrative remedies.

Warren similarly argues that Plaintiffs' claim of a breach of fiduciary duties in Count III is untimely. In pertinent part, ERISA requires that:

written proof of loss is required to be given. Legal actions are contingent upon having obtained reconsideration ...."
(Def. Prop. Rec. Exhibit G.)

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of ... (2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation ....

29 U.S.C. § 1113(a). The limitations period does not begin to run when the fiduciary's duty is breached, but rather when the participant or beneficiary possesses "actual knowledge." *Rush v. Martin Petersen Co., Inc.,* 83 F.3d 894, 896 (7th Cir.1996). *See also Gluck v. Unisys Corp.,* 960 F.2d 1168, 1177 (3rd Cir.1992) ("We hold that, under 29 U.S.C. § 1113(2), 'actual knowledge of a breach or violation' requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists ...."). "Actual knowledge" arises when an participant or beneficiary knows the "essential facts of the transaction or conduct constituting the violation." *Id.* (citations omitted). Since Plaintiffs maintain that Warren's breach of fiduciary duty was the denial of benefits, then Plaintiffs would have actual knowledge of the fiduciary breach upon receipt of notices of those denials.

Again, Warren maintains that these notices were sent to Plaintiff as early as November 1993 and no later than May 11, 1994, yet Plaintiffs filed their case on June 26, 1997, more than three years after the May 11, 1994 date. There is, however, an issue of disputed fact as to whether Plaintiffs received adequate notice, indeed if they received any notice at all, of the denial of benefits. Lacking notice, the court finds that an issue of fact remains as to whether Plaintiffs had what may be deemed to be "actual knowledge" of the breach of fiduciary duty. The court accordingly denies Warren's motion for summary judgment as it pertains to Count III.

 The court similarly concludes that Plaintiffs were not formally notified of the termination of the Plan. While ERISA does not specifically address notification of termination of plan benefits, the court believes that the general requirements of *29 U.S.C. § 1133* also apply to the termination of benefits. *See Camarda v. Pan Am. World Airways, Inc.,* 956 F.Supp. 299, 310 (E.D.N.Y.

1997) ("ERISA does not expressly provide a notice requirement for termination of benefits conferred under an ERISA plan. It does, however, provide a detailed mechanism for the processing of benefits claims and sets certain minimum requirements for the provision of notice to a beneficiary when a plan administrator denies a claim for benefits in whole or in part."). *See also Terry,* 145 F.3d at 38; *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 688–89 (7th Cir.1992); *Counts v. Am. Gen. Life and Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir.1997); *White,* 896 F.2d at 350. Thus, Plaintiffs' coverage under the Plan was in effect until they received actual notice that their coverage was terminated.

It is clear to the court that Plaintiffs never received any notification that Warren was terminating their participation in the Plan. It is thus reasonable to infer at this time that they were likewise unaware of the termination of their benefits. Granted, Warren provides evidence that Warren and a service provider were notified by Liberty that Plaintiffs' coverage was terminated. Most particularly, an "ADJUSTMENT INDEX" document indicates that Plaintiffs were "TERM 10–1–93." (Rec. for Jud. Rev. Exhibit C.) However, this document appears to have been sent from "LIBERTY MUTUAL" to "WARREN CORP ATTN: JOAN BE-NOIT." In addition, a "TRANSMITTAL FORM" sent to "PAID PRESCRIPTIONS, INC." indicates that Kodes was terminated on October 1, 1993. (Id. Exhibit D.) However, this evidence does not demonstrate that Plaintiffs themselves received notification of termination.

In fact, Plaintiffs may have reasonably assumed that the medical services for Ann Kodes were covered under the Plan. The record shows that Plaintiffs received both oral and written approval for medical services from LibertyReview. On or about November 4, 1993, Dr. Dasco's assistant called LibertyReview and received verbal approval. (Ann Kodes Aff. ¶ 3.) Both Plaintiffs and Dr. Dasco received confirmation of benefits via telegram on or about November 9, 1993. (Id. ¶ 4.)

Moreover, Plaintiffs could not have known that their failure to pay for their coverage under the Plan was a basis for the denial of

payment for medical services. According to Warren, both Plaintiff and his dependents were covered by the Plan as long as he made a ten dollar weekly contribution. (Cornish Aff. ¶ 5.) Plaintiff did not make the contribution to the Plan after August 11, 1990, and was notified "several times" that he was required to make this contribution. (Id.¶ 5.) Nonetheless, Warren continued coverage for Plaintiff and his dependents for over three years. Plaintiffs could have reasonably assumed that they were still covered under the Plan despite their failure to make the required contribution.[9]

## IV. CONCLUSION

In light of Plaintiffs' withdrawal of Count II, Defendants' motions for summary judgment will be ALLOWED on that count. In addition, for the foregoing reasons, Plaintiffs' motion for summary judgment on Counts IV, V, and VI will be DENIED and Warren's motion with respect to those three counts will be ALLOWED. Warren's motion for summary judgment on Counts I and III will be DENIED. Finally, Liberty's motion for summary judgment will be ALLOWED.

9. At oral argument, Plaintiffs stated that they no longer wished to pursue Count II which alleged violations of the COBRA.